An appropriate reply, under date of January 23, 1940, was filed.

We are of the opinion that even though technically Mrs. Reibold may not have had a life estate, yet her interest was that of a life tenant, although the burden was placed upon the bank to conserve and manage the property.

We are of the opinion that the same rule would apply as would be applicable to life tenancy.

*Judgment affirmed.*

HORNBECK, P. J., and BARNES, J., concur.

RATH, APPELLEE, *v.* CRADDOCK, APPELLANT.

(Decided June 24, 1940.)

*Mr. Anthony P. Conlon,* for appellee.

*Messrs. Maxwell & Ramsey* and *Mr. Wm. A. McKenzie,* for appellant.

Ross, J.   This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton county, rendered upon a verdict in favor of the plaintiff, who claimed damages resulting from medical treatment by the defendant physician.

It appears from the record, and there seems to be no serious difference of opinion as to the evidence, that the plaintiff called at the office of Doctors Mithoefer and Bryant, who were engaged in the practice of medicine as a partnership, and received treatment for a sinus infection.

The plaintiff states that thereafter, *either* on the 29th of June or the 2nd of July, 1936, she again called at the same offices for treatment.   Neither Dr. Mithoefer nor Dr. Bryant was in the office at this time. Dr. Bryant had left the partnership, and a Dr. Craddock was coming into the partnership with Dr. Mithoefer.   This latter partnership did not come into existence until July 1, 1936.   Previous to this last date, Dr. Craddock had been an employee of the firm of Mithoefer and Bryant, and as it appears Dr. Bryant had left the partnership, Dr. Craddock up to July 1st was still an employee of Dr. Mithoefer.

As the plaintiff is uncertain as to whether she was injured on the 29th of June or the 2nd of July, and the burden is upon her to establish facts imposing liability upon the defendant, Dr. Craddock, her evidence must be considered as establishing treatment by Dr. Craddock on the 29th of June.   This position is accepted by the plaintiff, whose counsel seeks to avoid the implications of the situation by recourse to law, which it is claimed takes a physician out of the rule freeing a servant from personal liability for the negligence of a fellow servant.

We may then direct our attention to the 29th of

June, 1936, when the plaintiff called at the offices, formerly operated by Dr. Mithoefer and Dr. Bryant, and on that day operated by Dr. Mithoefer alone, Dr. Craddock on that day being only an employee of Dr. Mithoefer, who was absent. Dr. Craddock was in full charge of the office.

The plaintiff expressed a desire to Dr. Craddock for further medical care. This physician referred her to a qualified nurse, whom he instructed to give the plaintiff an injection of omnadin. The nurse, in turn, put the plaintiff in charge of "a girl in blue," who apparently was an office attache, charged usually with minor nonmedical duties. This person, who is not otherwise referred to than as "the girl in blue," was never otherwise identified, and seems to have disappeared, gave the plaintiff an injection in the arm. The technique formerly adopted in earlier treatment of the plaintiff was not followed. The plaintiff states that "the girl in blue" produced a rather dirty-appearing tray or pan, in or on which was a square bottle, in which was the hypodermic needle. In former treatments, a sealed ampulla containing the fluid had been broken by the attending physician or nurse and the fluid extracted by inserting a sterilized hypodermic needle into the broken ampulla. No ampulla was produced upon the occasion in question. The "girl in blue" took the needle from the square bottle containing some fluid, injected the needle in the plaintiff's arm and pressed the plunger. The plaintiff expressed some pain and the attendant placed her hand over the spot where the needle had been inserted. An infection, causing some considerable injury to plaintiff followed in the course of some two weeks. It is of this subsequent injury the plaintiff complains, charging that it was the proximate result of unprofessional technique on the part of the defendant physician. Were this question presented in such a manner as to permit an expression of opinion upon the evidence, what was

developed by the record in view of the burden placed upon the plaintiff would not be sufficient to directly connect the injury with the treatment. However, it is not necessary to pass upon this matter.

As Dr. Craddock was still an employee of Dr. Mithoefer, and the nurse and "the girl in blue" were also employees of Dr. Mithoefer, the effect of this action is to attempt to charge one employee with the negligence—if any existed—of a fellow employee. No rule of law has ever imposed liability under such circumstances.

It is claimed that a physician, though merely an employee, has some unassignable obligation which imposes upon him liability for the acts of his fellow employees in a physician's office.

No controlling authority is cited in support of this claimed exception to the general rule.

It is asserted that the plaintiff is helpless in the presence of such a situation. Such is not the case, for the employer is responsible for the negligence of any of his employees. That the plaintiff has mistaken the really responsible defendant—if negligence and proximate cause were proved—is beside the point. It is clear that the plaintiff having failed to prove any direct liability on the part of the defendant for the acts of which she makes complaint, the judgment of the Court of Common Pleas should be reversed and judgment here entered for the defendant.

*Judgment reversed and final judgment for appellant.*

HAMILTON, P. J., and MATTHEWS, J., concur.